UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
NOV 17 2016
ARTHUR JOHNSTON
BY_____ DEPUTY

TED MOONEY,

   Plaintiff,

CASE NO.: 2:16 cv 202-KS-MTP

-vs-

BLUESTEM BRANDS, INC., d/b/a
FINGERHUT,

   Defendant.
_____/

# COMPLAINT

COMES NOW Plaintiff, TED MOONEY, by and through the undersigned counsel, and sues Defendant, BLUESTEM BRANDS, INC. d/b/a FINGERHUT, and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like BLUESTEM BRANDS, INC. d/b/a FINGERHUT from invading American citizen's privacy and prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, --US--, 132 S.Ct. 740, 745, 181 L.Ed. 2d 881 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give

1

telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7. Venue is proper in this District as Plaintiff resides within this District (Covington County, Mississippi), the violations described in this Complaint occurred in this District and the Defendant transacts business within Covington County, Mississippi.

## FACTUAL ALLEGATIONS

8. Plaintiff is a natural person, and citizen of the State of Mississippi, residing in Covington County, Mississippi.

2

9. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

10. Defendant is a corporation formed in Delaware and conducting business in the state of Mississippi.

11. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (601) ***-7656, and was the called party and recipient of Defendant's hereinafter described calls.

12. Plaintiff does not now, nor has he ever, entered into a business relationship with Defendant.

13. In or about September of 2015, Plaintiff received a telephone call to his aforementioned cellular telephone number from Defendant seeking to recover a debt from an individual named "Martha ******," who was and is unknown to him.

14. Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone number: (844) 761-0813, and when that number is called, a representative answers, "This call may be monitored or recorded. Thank you for calling Fingerhut."

15. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received and because when he answered a call from the Defendant he would

3

hear an automated message stating that the call was an attempt to collect a debt, and to please stay on the line to be connected to a representative.

16. Furthermore, each of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

17. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

18. In or about September of 2015, Plaintiff answered a call from Defendant to his aforementioned cellular telephone number, was met with an automated message stating that this was an attempt to collect a debt and to please stay on the line to be connected to a representative, was eventually connected to a representative, Plaintiff explained that he was not "Martha ******" for whom the Defendant was calling, asked that Defendant stop calling him, and was told by Defendant that his number would be removed.

19. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff continually despite Plaintiff informing Defendant that he was not the individual for whom they were calling, and not having his express permission to call his aforementioned cellular telephone number.

20. During the aforementioned phone conversation with Defendant's agent/representative in September of 2015, Plaintiff expressly revoked any consent Defendant may have believed it had to place telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

21. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

22.     On at least four (4) separate occasions, Plaintiff has answered a call from Defendant, been met with an automated message stating that the call was an attempt to collect a debt, held the line to be connected to a representative, told the Defendant that he was not "Martha ******", and demanded that Defendant stop calling Plaintiff's cellular telephone. His principal reason for answering these calls and making these demands of Fingerhut was the cumulative injury and annoyance he suffered from the calls placed by Fingerhut. These injuries are further described in paragraphs 27 through 33 herein.

23.     Each of the Plaintiff's requests for the harassment to end by informing them that he was not the individual for whom there were calling were ignored.

24.     From approximately September of 2015 through May of 2016, or at such time as will be determined after a thorough review of Defendant's records, Defendant has called Plaintiff's aforementioned cellular telephone on a daily basis, despite Plaintiff's repeated attempts to inform Defendant that they had the wrong number.

25.     From about September of 2015 through May of 2016 or at such time as will be determined after a thorough review of Defendant's records, Defendant has placed approximately two-hundred fifty (250) calls to Plaintiff's aforementioned cellular telephone number.

26.     Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times in the same hour, during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

27.     From each and every call placed without express consent by the Defendant to the Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

28. From each and every call placed without express consent by the Defendant to the Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from the Defendant's call.

29. From each and every call placed without express consent by the Defendant to the Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, the Plaintiff had to waste time to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of the Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

30. Each and every call placed without express consent by the Defendant to the Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, the Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, the Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of the Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

31. Each and every call placed without express consent by the Defendant to the Plaintiff's cell phone resulted in the injury of unnecessary expenditure of the Plaintiff's cell phone's battery power.

32. Each and every call placed without express consent by the Defendant to the Plaintiff's cell phone resulted in the injury of a trespass to the Plaintiff's chattel, namely his cellular phone and his cellular phone services.

33. As a cumulative result of Defendant's ceaseless barrage of unlawful calls to Plaintiff's aforementioned cellular telephone number, the Plaintiff suffered the injuries of annoyance, anxiety, intimidation, and emotional distress.

34. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

35. By continuing to call the Plaintiff despite being informed by the Plaintiff that he was not the "Martha ******" individual for whom they were calling, Plaintiff was led to believe the Defendant thought he was lying and the only way to stop the harassing calls was to pay the alleged debt.

36. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to call individuals, just as it did to the Plaintiff's cellular telephone in this case.

37. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as it did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or Defendant, to remove the number.

38. Defendant's corporate policy is structured as to continue to call individuals like the Plaintiff, despite these individuals informing Defendant that they are the wrong party.

39. Defendant's corporate policy is structured as to continue to call individuals like the Plaintiff, despite these individuals informing the Defendant that they are not the individual for whom they were calling, and that they wish for the calls to stop.

40. Defendant has had numerous complaints from consumers against them across the country asking to not be called; however, the Defendant continues to call the consumers.

41. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

42. Defendant has numerous complaints against them across the country asserting that their automatic telephone dialing system continues to call despite being informed that they are the wrong party.

43. Defendant's corporate policy provided no means for the Plaintiff to have his number removed from the call list.

44. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge that the called parties are not the individual for whom Defendant is calling.

45. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

46. Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA)

47. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-six (46) as if fully set forth herein.

48. Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff was not the individual for whom the Defendant was calling and wished for the calls to stop.

49. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

_____
Gregory J. Bosseler, Esquire
Mississippi Bar #: 105011
Morgan & Morgan, Jackson, MS
188 East Capitol St.
Jackson, MS 39201
Tele: (601) 949-3388
GBosseler@forthepeople.com
rirby@forthepeople.com
Attorney for Plaintiff